## CHICAGO & EASTERN ILLINOIS RAILROAD COM-PANY *v.* COLLINS PRODUCE COMPANY.

**ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.**

No. 138.  Submitted January 16, 1919.—Decided March 3, 1919.

In an action against an initial carrier to recover for goods lost on the line of a connecting carrier, the Carmack Amendment does not lay upon the shipper the burden of proving that the loss was "caused by" the connecting carrier.  P. 191.

Where a shipper took depositions as to telephone and postal communications tending to prove liability of a connecting carrier for a loss of goods, and the defendant initial carrier introduced the depositions in evidence, *held*, that it could not be heard to object that the senders of the messages were not identified as officers or agents of the connecting carrier.  P. 192.

A shipment of poultry, delayed by floods, was appropriated by state military authorities, at the solicitation of the carrier and upon its false or not justified representation that the fowls were abandoned by their caretaker and dying.  *Held*, that the carrier was liable to the shipper, as the loss was not attributable to "the act of God" or "the authority of law" excepted in the bill of lading.  *Id.*

235 Fed. Rep. 857, affirmed.

The case is stated in the opinion.

*Mr. Homer T. Dick* and *Mr. Lindorf O. Whitnel* for plaintiff in error:

It is fundamental that the carrier is relieved from the duty to carry when prevented by an act of God. *Railroad Co.* v. *Reeves,* 10 Wall. 176.

It is admitted that the Governor of Ohio had proclaimed martial law and that military authority had superseded civil in Dayton and Montgomery County, and the uncontradicted evidence is that militia took possession of rail-

roads and all property in transit; placed cards on all cars, directed movement and disposition thereof; ousted the officers and agents of carriers from possession and control; and even the superintendent of the carrier had to get a military pass before he was permitted to go upon property of that railroad. Under these circumstances, even if such superintendent recommended confiscation of shipment, his action could not be in law the act of the carrier, when the carrier was not in possession or control of shipment, it being in possession of militia at time. Martial law is of necessity arbitrary. It is administered by the commander whose will is the law. Such law is the offspring of necessity and transcends the ordinary course of law. *United States* v. *Diekelman,* 92 U. S. 520; *In re Egan,* 8 Fed. Cas. 367; *Griffin* v. *Wilcox,* 21 Indiana, 370.

Before a carrier can be held liable for the acts and declarations of an individual, the authority of such individual to act as an agent of the carrier must be established.

The fact that the defendant read the depositions of certain witnesses taken by and on behalf of the plaintiff does not add to or extend the probative force of such testimony. It proves no more if read by one party than it would if read by the other. If the plaintiff had read them without objection on the part of the defendant, the statements therein would have been no evidence of the existence of the relation of principal and agent, between the persons writing the postal card and communicating by telephone with the military authorities and the connecting carrier; this for the reason that, with the depositions in evidence, there is still no evidence in the record tending to establish the agency; and the state of the case was such that, without agency proven, a verdict should have been directed in favor of plaintiff in error. It cannot be the law that, if the depositions had been read by the plaintiff, without objection, a verdict should have been directed for want

of evidence establishing an essential element, yet, when read by the defendant these same depositions furnish evidence establishing such essential element.

The testimony of the witnesses in the depositions, given its most extended weight, can be said to do no more than set forth the statements of a supposed agent, and the law is that before such statements could be evidence there must be added to them proof of the existence of such agency. *United States* v. *Boyd*, 5 How. 29.

The testimony shows that the caretaker in charge of the shipment requested the military commander to take the carload of chickens off his hands.

The bill of lading routed the shipment over connecting lines, clearly showing that the initial carrier would not handle it to destination, and limited the initial carrier's liability to loss on its own line, except where otherwise provided by law. The cause of action then depended on the Carmack Amendment, making the initial carrier liable for losses "caused by" any connecting carrier. Therefore, it was not enough for plaintiff to prove shipment by initial carrier and non-delivery to consignee. *Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Cincinnati, New Orleans & Texas Pac. Ry. Co.* v. *Rankin*, 241 U. S. 319.

*Mr. Charles Wham* and *Mr. Fred L. Wham* for defendant in error. *Mr. G. Gale Gilbert* and *Mr. Harman Gilbert* were also on the brief:

The determination of the facts was peculiarly the province of the jury and their verdict ought not to be disturbed.

A party placing in proof the depositions of the opposite party cannot be heard to complain that the jury gave credit to such testimony. *Fountain* v. *Ware*, 56 Alabama, 558; *Jewell* v. *Center & Co.*, 25 Alabama, 504; *Adams* v. *Russell*, 85 Illinois, 287; *Forward* v. *Harris*, 30 Barb. 338; *Harry* v. *Goldin*, 37 How. Pr. 310.

As to the admissibility of telephone conversations, see *Godair v. Ham National Bank*, 225 Illinois, 575.

The burden of proof was on the defendant and the bill of lading a through contract. *Galveston, H. & S. A. Ry. Co. v. Wallace*, 223 U. S. 491, 492.

Military control, or so-called martial law, does not relieve a carrier from the performance of its duty. *Illinois Central R. R. Co. v. McClellan*, 54 Illinois, 71; *Griffin v. Wilcox*, 21 Indiana, 370.

An act of God to be a defense must be the sole cause of the loss. *Wald v. C., C., C. & St. L. R. R. Co.*, 162 Illinois, 545; *Bell v. Union Pacific R. R. Co.*, 177 Ill. App. 377; *Wolf v. American Express Co.*, 43 Missouri, 421; *Mueller Grain Co. v. Chicago &c. Ry. Co.*, 200 Ill. App. 347; Sherman & Redfield, Negligence, 4th ed., § 39.

As soon as the flood could reasonably be overcome the carrier must complete the transportation without delay. *Railroad Co. v. Reeves*, 10 Wall. 176, 191; *Baltimore & Ohio R. R. Co. v. O'Donnell*, 49 Ohio St. 502.

In addition to being bound by the bill of lading and the fair intendment of the provisions, plaintiff in error was bound by the Carmack Amendment. *Atlantic Coast Line R. R. Co. v. Riverside Mills*, 219 U. S. 194–208; *Fry v. Southern Pacific Co.*, 247 Illinois, 576; *Cincinnati, New Orleans & Texas Pac. Ry. Co. v. Rankin*, 241 U. S. 319.

Damages for delay on the connecting railroad may be recovered from the initial carrier. *New York, Philadelphia & Norfolk R. R. Co. v. Peninsula Produce Exchange*, 240 U. S. 34.

The basis of value is the *bona fide* invoice price to the consignee.

MR. JUSTICE CLARKE delivered the opinion of the court.

On March 21, 1913, the plaintiff in error, the initial carrier, accepted a carload of live poultry from the de-

fendant in error, the shipper, for transportation from Cypress, Illinois, to Newark, New Jersey, and issued the customary bill of lading, containing the provision that the carrier should not be liable for any loss or damage to the property "caused by the act of God . . . or the authority of law."

In the progress of transportation the car arrived at Dayton, Ohio, on the morning of March 25th, and was there delayed by a flood caused by rains so unprecedented that on that date martial law was declared applicable to Dayton and the territory in which the car was held. The flood waters overflowed the rails on which the car stood, but did not reach the body of the car so as to affect the health of the poultry and access to and from it was readily maintained by the caretaker.

On March 31st the state military authorities took possession of the car and distributed its contents to persons rendered destitute by the flood.

Suit against the carrier, based on the bill of lading, commenced in a state court, was removed to the appropriate District Court of the United States.

On the trial of the case the shipper introduced evidence tending to prove that the confiscation was due to the solicitation of representatives of the carrier and to their false representation that the fowls were dying from lack of food and attention and had been or were about to be abandoned by the caretaker, but the Railroad Company denied this and introduced evidence tending to prove that there was no such solicitation or false representation and that the confiscation was rendered necessary by the exigencies of the situation and by the necessity for supplying food to the people rendered homeless by the flood.

The trial court charged the jury:

That it was the duty of the carrier to transport the property to destination, if it could do so; that it could not overcome the flood or the action of the military authori-

ties and that if the latter acted of their own volition the shipper could not recover; but that if the military authorities seized the consignment solely upon and by reason of the invitation of the Railroad Company, and if, but for this confiscation, the property or any part of it, in the exercise of ordinary care, could have been transported to its destination, then the defendant, the carrier, would be liable for the value of such part of it as the jury might find from the evidence could have reached its destination, to be determined by the invoice price at the point of shipment, less any deterioration caused by the delay solely incident to the flood.

The verdict was for the shipper and we are asked to review the judgment of the Circuit Court of Appeals affirming the judgment of the District Court entered upon that verdict.

The carrier argues that three errors, each requiring reversal of the judgment, appear in the record.

The first claim is that the court refused to rule, that by its terms, the Carmack Amendment (34 Stat. 595, c. 3591, § 7) casts upon the shipper the burden of proving affirmatively that the loss which occurred on a connecting line was "caused by" the connecting carrier. But, assuming that the question is presented by the record, which is doubtful, *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Wallace*, 223 U. S. 481, 491, rules that, under the act as construed in *Atlantic Coast Line R. R. Co.* v. *Riverside Mills*, 219 U. S. 186, 205, 206, in such a case as we have here the liability of the initial carrier is as if the shipment had been between stations in different States, but both upon its own line, and this renders the contention untenable. *Adams Express Co.* v. *Croninger*, 226 U. S. 491, does not conflict with this conclusion. *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin*, 241 U. S. 319, 326.

The second claim is that error was committed in the ad-

mission of testimony of military officers that the confiscation of the property resulted from communications received by them by postal card and telephone from the agents and officials of the Railroad Company respecting the condition of the poultry and that the caretaker had abandoned it, without evidence being required to identify the senders of such messages as officers or agents of the Company. But this evidence, while taken in the form of depositions by the shipper, was introduced by the carrier. One who asks a court and jury to believe evidence which he introduces will not be heard to claim that, for technical reasons, it was not admissible.

There remains only the contention that substantial error was committed by the Circuit Court of Appeals in approving as sound law the charge to the jury that if the military authorities seized the consignment of poultry solely upon and by reason of the invitation of the Railroad Company, and that if but for this confiscation the property, or any part of it, in the exercise of ordinary care, could have been transported to its destination, then the carrier would be liable, etc.

The shipment was not lost by the "act of God," and the defense of the carrier on the facts was narrowed to the claim that it was prevented from performing its contract "by the authority of law,"—by the appropriation by the military authorities.

The verdict approved by two courts will be accepted by this court as a conclusive finding in favor of the shipper upon the questions of fact involved.

The duties and liabilities of a common carrier have been so fully discussed by this court, notably in *Railroad Co.* v. *Lockwood*, 17 Wall. 357, and in *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. 174, that they need not be re-stated here.

The common-law principle making the common carrier an insurer is justified by the purpose to prevent negli-

gence or collusion between dishonest carriers or their servants and thieves or others, to the prejudice of the shipper, who is, of necessity, so remote from his property, when in transit, that proof of such collusion or negligence when existing, would be difficult if not impossible. *Coggs v. Bernard,* 2 Lord Raymond, 909; *Riley v. Horne,* 5 Bing. 217. The obligation to transport and to deliver is so exceptional and absolute in character that the relation of the carrier to the shipper was characterized in *Railroad Co. v. Lockwood, supra,* as so partaking of a fiduciary character as to require the utmost fairness and good faith on its part in dealing with the shipper and in the discharge of its duties to him, and so lately as *American Express Co. v. Mullins,* 212 U. S. 311, this court declared that if a carrier, by connivance or fraud, permitted a judgment to be rendered against it for property in its charge, such judgment could not be invoked as a bar to a suit by a shipper.

These decisions, a few from many, illustrate the character of the relation of trust and confidence which must be sustained between a common carrier and a shipper. It rests at bottom upon a commercial necessity and public policy which would be largely defeated if the carrier were permitted by false representations, or by representations, which, though not intentionally false, were not known to be true, to procure the appropriation by military or other authority of property in its custody, as the jury found was done in this case, and thereby defeat its obligation to car ᵕ and deliver.

These principles of law governing the relations between the carrier and the shipper, amply justified the charge of the trial court to the jury, and the judgment of the Circuit Court of Appeals must be

*Affirmed.*