## INLAND WATERWAYS CORPORATION v. HALLET & CAREY CO.
### No. 9137.

Circuit Court of Appeals, Eighth Circuit.
Aug. 10, 1931.

Lewis L. Drill, U. S. Atty., and George A. Heisey, Asst. U. S. Atty., both of St. Paul, Minn., for appellant.

G. H. Smith, W. W. Gibson, and V. J. Hermel, all of Minneapolis, Minn., for appellee.

Before KENYON and BOOTH, Circuit Judges, and DEWEY, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a judgment recovered by the appellee, Hallet & Carey Company, against the Inland Waterways Corporation, appellant, based upon a shortage of grain at the time of delivery at destination; the grain having been shipped from St. Paul to New Orleans over the barge line of appellant.

The case was tried to the court without a jury, a stipulation waiving a jury having been made a matter of record.

The plaintiff alleged in its complaint that defendant was a common carrier by water; that defendant, at the times stated, received from plaintiff certain grain, the amount being stated, property of plaintiff, and agreed to carry the same to New Orleans and deliver same to plaintiff for valuable consideration; that defendant failed to carry and deliver part of the grain, the amount being stated, whereby plaintiff was damaged.

The facts so stated constituted a good cause of action and the facts are expressly admitted.

It must be conceded that if these constituted all the facts, plaintiff was entitled to judgment.

But defendant, in its answer, set up that the grain was carried by it under written contracts, and that by the terms of the contracts, defendant was exempt from liability for loss based on variation of weights or on shrinkage unless plaintiff showed that the loss was caused by negligence on the part of the defendant.

Many of the facts alleged in the answer were admitted; among them, that the grain shipped by plaintiff was bulk grain; that it was carried under and by virtue of written

contracts, which contained the following, among other, provisions:

"The carrier and/or its agents in possession of all or any of the property herein described shall be liable as at common law for any loss thereof or damage thereto except as hereinafter provided. * * *

"(b) The carrier accepts bulk freight without knowledge of quantity or quality. * * * No claims for variation of weights or shrinkage will be allowed except in case of loss due to negligence on the part of the carrier."

That the losses sustained by plaintiff were computed according to and arose by reason of the variation or difference in weights of the respective cargoes at point of origin and at destination, as shown by weighmaster's certificates. The final admission of fact was: "That the plaintiff corporation offers no evidence of actual negligence on the part of the defendant corporation, or its servants, and the defendant corporation offers no evidence of lack of negligence on its part, or any evidence explaining said shortage, other than as is incorporated in the foregoing facts."

The full stipulation of facts is set out in the margin.[1]

On this state of the record, both parties moved for judgment. The court denied de-

times mentioned herein was and now is a corporation duly created, incorporated, organized and existing under and by virtue of the laws of the United States, to-wit, the Act of the Congress of the United States approved June 3, 1924 (43 Statutes, 360) as amended [49 USCA § 151 et seq.], and that the Government of the United States has subscribed for, taken, and at all the times mentioned herein was and now is the owner of all the capital stock of said defendant corporation, and that this controversy is one arising under the laws of the United States of which this Court has original jurisdiction, and that at all the times mentioned herein, the defendant corporation was a common carrier of freight for hire by water between the places herein mentioned. That the 600,-000 pounds of wheat shipped by plaintiff corporation on or about April 17, 1929, in defendant carrier's Barge Number 322, and the 2,280,000 pounds of wheat shipped by plaintiff corporation on or about September 9, 1927, in defendant carrier's Barges 301, 305, 311, 314 and 315 (the cargo in the last numbered Barge being transferred by its agent in transit at St. Louis, Missouri, to Barge Number 552), constituted bulk freight and/or bulk grain shipments; that said bulk freight was conveyed by defendant carrier and was covered under and by written contracts of affreightment entered into by and between the defendant carrier and plaintiff corporation on or about the dates aforesaid, which contracts, and each of them, contained, so far as is material here, the following specific contract terms and conditions:

" 'The carrier and/or its agents in possession of all or any of the property herein described shall be liable as at common law for any loss thereof or damage thereto except as hereinafter provided.

" '(a) Neither this carrier nor its agent in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the authority of law or the act or default of the shipper or owner, or from a defect or vice in the property.

" '(b) The carrier accepts bulk freight without knowledge of quantity or quality. On bulk grain settlement for its charges at New Orleans, La., will be on basis of New Orleans Board of Trade weights, and at other ports on basis of weights ascertained at destination. Settlement for its charges on bulk freight other than grain will be on basis of railroad weights at destination, if obtainable; if not, then according to weights determined by displacement measurement of the freight in barges at destination or port of interchange. No claims for variation of weights or shrinkage will be allowed except in case of loss due to negligence on the part of the carrier.

" '(c) Bulk freight will be accepted only when a specific prior booking for a fixed amount is made and a definite time when the freight will be ready for forwarding from point of origin is arranged with the carrier.

" '(d) Bulk freight will be accepted only when delivery can be made at facilities suitable for prompt discharge of the cargo from barge. When the freight is available for delivery at the port written notice will be sent or given the party to whom delivery is to be made.

" '(e) Except as provided in the paragraph immediately following, forty-eight hours after the day on which the notice provided for in (d) above is given free time will be allowed for loading or unloading bulk freight, to or from barges of less than 1,000 tons capacity, after which a demurrage charge will be assessed of $25.00 per day per barge of such capacity; on each barge of greater capacity seventy-two hours free time will be allowed, after which a demurrage charge of $75.00 per day will be assessed. In computing free time and demurrage on bulk freight, Sundays and holidays will be excluded.

" '(f) Ten calendar days free time after the day on which the notice provided in (d) above is given will be allowed at the Port of New Orleans on bulk

---

[1] "The defendant carrier admits that the plaintiff corporation is a corporation duly organized and existing under the laws of Minnesota; that on or about the 17th day of April, 1929, at St. Paul, Minnesota, the defendant, as a common carrier, by water, received from the plaintiff corporation six hundred thousand pounds of wheat, the property of plaintiff corporation, of the value of $1.16½ per bushel, and agreed with plaintiff for a valuable consideration to carry the same to New Orleans, Louisiana, in Inland Waterways Corporation Barge Number 322, and there deliver the same to the plaintiff or its order.

"That though a reasonable time therefor has elapsed, the defendant carrier has not carried or delivered 1,470 pounds of said grain as agreed, though delivery of the same was duly demanded to plaintiff's damage in the sum of $25.85.

"That on or about September 9, 1927, at St. Paul, Minnesota, the defendant carrier received from the plaintiff corporation, 2,280,000 pounds of wheat the property of the plaintiff corporation, of the value of $1.35¼ per bushel, and agreed with plaintiff for a valuable consideration to carry the same to New Orleans, Louisiana, in Inland Waterways Corporation Barges 301, 305, 311, 314 and 315 (the cargo in the last numbered Barge 315 being transferred by defendant's agent in transit at St. Louis, Missouri, to Barge Number 552), and there deliver the same to plaintiff or its order.

"That though a reasonable time therefor has elapsed, the defendant has not carried or delivered 10,514 pounds of said grain, as agreed, though delivery of the same was duly demanded to plaintiff's damage in the sum of $221.44.

"That a notice of claim was duly filed by plaintiff on all of said shipments, and on account of all and singular, plaintiff was damaged in the sum of $247.29. * * *

" * * * The plaintiff corporation admits that the following facts are true: That defendant at all the

fendant's motion and granted plaintiff's. The gist of defendant's motion was that it was incumbent on plaintiff, as a prerequisite to recovery, to prove negligence on the part of defendant, and that plaintiff had wholly failed so to do.

Questions relating to pleading and questions relating to burden of proof have been argued at length on this appeal by respective counsel. We do not find it necessary to determine or discuss them.

We think the vital question involved in the case at bar is whether the court erred in entering judgment for plaintiff upon the admitted facts.

■ 1. We start with the fact expressly admitted in the contract of carriage that the carrier is liable as at common law except as thereafter provided in the contract. At common law the common carrier was liable as if an insurer, with a few exceptions, such as the act of God, etc.; and with the same exceptions, the carrier was liable, whether negligent or not, if it failed to deliver the goods received for shipment. The presumption was, in case of failure to deliver, that it was at fault; and the presumption was not rebuttable save as to the few exceptions, and the carrier had to prove itself within the exceptions. 4 Elliott on Railroads (2d Ed.) § 1454; 10 C. J. p. 107, § 129; 6 Am. & Eng. Encyc. of Law, p. 262; Clark v. Barnwell, 12 How. 272, 280, 13 L. Ed. 985; The Niagara v. Cordes, 21 How. 7, 22, 23, 16 L. Ed. 41; Hall & Long v. Nashville & C. R. Co., 13 Wall. 367, 372, 20 L. Ed. 594; Bank of Kentucky v. Adams Exp. Co., 93 U. S. 174, 181, 23 L. Ed. 872; North Penn. R. Co. v. Commercial Bank, 123 U. S. 727, 733, 8 S. Ct. 266, 31 L. Ed. 287; Adams Exp. Co. v. Croninger, 226 U. S. 491, 509, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; The E. M. Norton (C. C.) 15 F. 686. See Chicago & E. I. R. Co. v. Collins Produce Co., 249 U. S. 186, 192, 39 S. Ct. 189, 63 L. Ed. 552.

This common-law presumption exists in the case at bar by express terms of the contract, and also by express terms some of the common-law exceptions are not available to the carrier; but a new exemption has been added by the contract of carriage to the few which existed at common law. The new exemption is this: That the carrier shall not be liable for variation of weights or shrinkage in shipments of bulk freight except in case of loss due to negligence on the part of the carrier. This new exemption has been carved out of the old common-law liability. This exemption is a matter of contract, and the contract is in writing and subject to construction. The language is:

"The carrier and/or its agents in possession of all or any of the property herein described shall be liable as at common law for any loss thereof or damage thereto except as hereinafter provided. * * *

"(b) The carrier accepts bulk freight without knowledge of quantity or quality. * * * No claims for variation of weights or shrinkage will be allowed except in case of loss due to negligence on the part of the carrier."

■ The particular exemption clause relied upon by the carrier is as follows: "No claims for variation of weights or shrinkage will be allowed except in case of loss due to negligence on the part of the carrier."

---

grain held in barges for delivery to elevator, after which a storage charge of 1/25 of one cent per bushel per day will be assessed.

" '(g) Bulk freight will be received and moved at the convenience of the carrier. The carrier accepts bulk freight as base cargo with the right to set out barges containing such cargo at intermediate points for the accommodation of other traffic. Carrier however will move all bulk cargo to destination with due diligence.

" '(h) The carrier expressly waives the benefit of any protection, limitation or exemption under or by virtue of the Act of February 13, 1893, commonly known as the Harter Act [46 USCA §§ 190–195], or under the Act of March 3, 1851, with respect to the limitation of the liability of shipowners, or any Acts amendatory thereof or supplemental thereto. [See 46 USCA § 181 et seq.].

" '(i) Excepting in the case of goods on which the free time has expired or which are stopped or held in transit upon request of the shipper, owner or party entitled to make such request, the Mississippi Warrior Service hereby also assumes liability for and agrees to pay for all loss of or damage to freight, while in its possession as carrier or bailee, or while freight is being loaded or unloaded, due to fire or marine perils, or to floods, windstorms or other Acts of God.

" 'Note: Whenever there is joint water and rail traffic it shall be as provided, viz.:

" 'When in possession of rail carriers, freight described herein will be subject to contract terms and conditions of the uniform bill of lading prescribed by the Interstate Commerce Commission.'

"That the respective losses sustained by the plaintiff corporation, to-wit, in one instance, 1470 pounds of wheat and, in the other instance, 10,514 pounds of wheat, are computed by plaintiff corporation according to and arise by reason of the variation or difference in the weights of the respective cargoes of wheat shipped in the respective barges aforesaid at point of origin and at destination, in that the weighmaster's certificates at St. Paul, Minnesota, covering said cargoes, at said point, show the aggregate weight thereof to be 2,880,000 pounds, compared with the weighmaster's certificates at New Orleans, Louisiana, covering said cargoes at said point, showing the aggregate weight thereof to be 2,868,016 pounds.

"That the plaintiff corporation offers no evidence of actual negligence on the part of the defendant corporation, or its servants, and the defendant corporation offers no evidence of lack of negligence on its part, or any evidence explaining said shortage, other than as is incorporated in the foregoing facts."

The language is not well chosen, and the meaning is not free from doubt. Strictly speaking, there can be no claim for "variation of weights." Appellant apparently treats the words "variation of weights" and the word "shrinkage" as synonymous, so that the exemption clause covers only one thing, viz., "shrinkage." Appellee apparently treats the words "variation of weights" as meaning "shortage in weights," so that the exemption clause would cover two things: Shortage in weights, and shrinkage.

We think the latter construction of the clause is the correct one. "Variation of weights" does not signify shrinkage any more than it signifies theft; and while "variation of weights" might be evidence of shrinkage, it might also be evidence of numerous other things.

■■ Furthermore, it seems clear from the contract that the carrier is not exempt from liability for all shortage in weight or for all shrinkage, but only for some varieties thereof. Those varieties do not include shortage or shrinkage due to negligence by the carrier. This would seem to be the reasonable construction of the language of the contract; but if the wording leaves the meaning doubtful, the contract, being one limiting the common-law liability of the carrier, must be construed most strongly against the carrier.

■ In order to effectively claim an exemption from liability for shortage, the carrier must show that the exemption claimed is within the terms of the contract. It does not show this when it simply shows a shortage. It must also show that the shortage was a nonnegligent one.

This is not a case where the common-law liability is abrogated and a new and more restricted liability put in its place, if that could be done. It is a case where the common-law liability remains except as exemptions are carved out of it; and the admitted facts do not show a nonnegligent shortage.

2. Appellant cites numerous authorities which hold that where the carrier is made exempt by contract from part of its common-law liability and proves that the loss falls within the exemption, the shipper cannot recover unless he proves that the carrier was negligent. The cases upholding this rule are legion in number and cover a great variety of circumstances; they are collected in 10 C. J. p. 377, § 580. We do not think the rule is applicable to the facts in the case at bar. The cases cited in support of the rule proceed upon the theory that the carrier proves that the loss is within an excepted *cause of loss* such as the act of God, or such as leakage, breakage, etc. But in the case at bar the facts do not show that the carrier or anyone else has disclosed the *cause of loss*. The facts stated are that the carrier has not delivered the full amount of grain received; that the losses are computed by plaintiff according to and arise by reason of the variation or difference in the weights of the cargoes of wheat at a point of origin and at destination. These facts disclose a shortage, but the cause is not shown. The variation in weights is not the cause of the shortage. It is simply a method of proof of the shortage. The shortage itself is not a cause but a result of some cause. The facts do not show any cause of the shortage, and until the cause of the shortage is shown, the facts do not bring the carrier within the rule above stated.

Our conclusions are that the facts fail to show that the defendant carrier is brought within the shortage clause of the contract of carriage exempting it from liability, because they fail to show nonnegligent shortage; further, that the facts do not bring the case within the rule that where the carrier has shown the *cause of loss* and that cause is one for which the carrier is exempt from liability for loss it is incumbent on the shipper to show negligence on the part of the carrier, because the facts fail to show the *cause of loss*.

Under the facts stipulated, the presumption remains intact that the loss was caused by the fault of the carrier.

We think the trial court was right in ordering judgment for the plaintiff, and the judgment is affirmed.