Bernard Schulenklopper v. Commissioner.
Schulenklopper v. Commissioner
Docket No. 10812.
United States Tax Court
1947 Tax Ct. Memo LEXIS 144; 6 T.C.M. (CCH) 846; T.C.M. (RIA) 47203; July 10, 1947
*144 Meyer Bernstein, Esq., for the petitioner. Fred R. Tansill, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner challenges respondent's determination of deficiency in income tax for the year 1943 in the amount of $896.46. Petitioner claims an overpayment. The deficiency results from respondent's disallowance of a loss from theft, claimed by petitioner in the taxable year. Findings of Fact Petitioner, an individual, is a resident of New York City, and filed his tax return on a cash basis for the year involved with the collector of internal revenue for the third district of New York. Prior to 1940, petitioner was a resident of Frankfort, Germany, where he owned a shoe factory, employing more than 200 people. During the early part of 1939 petitioner was in a concentration camp in Germany. As he anticipated emigrating to the United States with his family, consisting of his wife and two children, upon his release he instructed his wife to purchase, with his funds, various articles of personal property, consisting chiefly of wearing apparel for members of the family, household effects, trunks, and *145 valises. Such purchases were made by her between January and April, 1939, in Frankfort, and paid for in German marks. Additional items of wearing apparel were thereafter purchased in England, when petitioner arrived there en route to the United States. In September, 1941, petitioner and his family, then residing in Fitchburg, Massachusetts, decided to return to New York City. Preparatory to the move, petitioner's wife personally packed the family's wearing apparel and household effects in twenty-three trunks and valises, and arranged for their shipment by motor van to New York City, via the A.B. & C. Transportation Company, a common carrier. Two or three days later, the luggage was delivered to petitioner's home in New York City, after having been stored for one night. As delivery was made late in the evening, it was not until the next morning that the luggage was checked and unpacked, when it was discovered that one of the pieces of luggage was missing, and that the locks on some of the others had been forced and various articles had been taken. A comparison of the gross weight of the luggage turned over to the carrier with the gross weight of the delivered pieces disclosed a *146 considerable difference. The police and carrier were immediately notified of the loss, and investigations were undertaken, but none of the articles was recovered. Petitioner carried no insurance on this property. Although no inventory of items was prepared when the luggage was packed, upon discovery of the theft, petitioner's wife, with the assistance of the other members of the family, prepared a list of the stolen articles, comprising over 300 individual pieces, the greater portion of which were articles of wearing apparel, the remainder consisting of silverware and other household effects. This original list was apparently handed to the police. Shortly after discovery of the theft, petitioner retained an attorney in an attempt to recover the cost of the goods stolen. After negotiations with the carrier had failed, suit was filed in New York in March, 1942, which just prior to trial, one year later, was settled for $800. Petitioner paid his attorney $200 as attorney's fees, and received the balance of $600. The settlement was accepted by petitioner upon advice of his attorney, as petitioner was in need of funds and as there was some doubt as to the ultimate success of the *147 pending suit, particularly because there was some uncertainty as to the motor carrier's liability, since another company had the luggage for one night. Most of the stolen articles were purchased in Germany in 1939; some were purchased in England, and one, a $9.50 radio, was purchased in the United States in 1940. A large part of the stolen items were unused. On a list prepared by petitioner's wife for purposes of this proceeding, carrying in separate columns a description of the articles lost, the year acquired, original cost, depreciation, and valuation on date of loss, she determined the original cost of the stolen items to be $4,306.93. For the articles purchased in Germany she translated the cost in German marks to American dollars by attributing a value of forty cents to the German mark, the actual exchange rate during the early months of 1939 being slightly higher. (Circular No. 1, Director of the Mint, Treasury Decisions under Customs and Other Laws, T.D. 49774, volume 74, p. 312, 314; T.D. 49831, ibid., p. 402, 403.) The cost determined for the items purchased in Germany was exclusive of a 100 percent levy, said to have been imposed by the German *148 Government upon petitioner as a person of Jewish faith in order that he might buy and remove these possessions from the country. Upon the advice of petitioner's accountant, depreciation was attributed to many, but not to all of the items, in the total sum of $1,306.85, leaving a depreciated value as of the time of the theft in September, 1941, of $3,000.08. The depreciated cost and the value of the stolen articles at that time was $1,400. Petitioner's loss was $800. On his 1943 income tax return, petitioner claimed a loss of $2,400, which he described as "Loss on Lugage [sic] lost in transit not compensated for by insur." At the hearing petitioner was granted leave to amend his petition to seek to increase the amount of the loss to $5,400.16, attributing to cost of the items stolen, irrespective of where purchased, the 100 percent levy imposed by the German Government. Such amended petition has been filed. Opinion A loss by theft is expressly admitted by respondent. He disputes the amount and insists that the year of deduction should be that of the theft itself, 1941, rather than 1943 when the amount of actual loss was fixed by settlement with the carrier. Where a loss *149 is covered by insurance, and there is a reasonable prospect of some recovery, deduction is permissible in the year of final determination of the insurance claim. Allied Furriers Corp., 24 B.T.A. 457; Rose Licht, 37 B.T.A. 1096. The contention here that the carrier was not, in fact, liable as an insurer is tenuous at best. Certainly, from what appears, there was a prima facie recourse of that character. See 9 Am. Jur. 813, Bank of Kentucky v. Adams Express Co., 93 U.S. 174; Chicago & E.I.R.R. Co. v. Collins Produce Co., 249 U.S. 186. That the claim might have been, or even ultimately was, successfully resisted would not require deduction when the theft occurred. Thus, in Allied Furriers Corp., supra, where petitioner was "protected" by burglary insurance it was ultimately decided that petitioner "was not entitled to recover the loss from the insurer." Nevertheless the loss was deductible then, and not when the theft occurred. In that case the facts "show that there the insurance companies asserted that a representation in the application for insurance made by the insurance broker was incorrect and that the insurer refused *150 to pay the loss. Nevertheless, we concluded there that the taxpayer was protected by insurance in the year 1925 when the casualty occurred * * *." Rose Licht, supra, 1099. The burden "upon the taxpayer" is "to prove that his claim under insurance policies is substantial enough to be adjusted, in whole or in part, within a reasonable time." Rose Licht, supra, 1100. We think that the fact that there actually was such an adjustment here suffices at least to sustain that burden in the chance of any countervailing evidence. Although petitioner's proof of the amount of his loss is sketchy, and in some respects obviously inaccurate, the undisputed fact of loss has caused us to make the best estimate possible under the circumstances. Cohan v. Commissioner (C.C.A., 2nd Cir.), 39 Fed. (2d) 540. Both depreciated cost and value are involved in determining the amount of loss actually sustained. Helvering v. Owens, 305 U.S. 468. We have set forth in our findings our ultimate determination of fact as to the figures with these principles in mind. No weight has been given to the asserted German tax, both because its nature is indefinite and because *151 its influence in raising the market value of the property is not apparent. Decision will be entered under Rule 50.