**W. M. SKAGGS and Elbert Skaggs, copartners d/b/a Skaggs Brothers Produce, Plaintiffs,**

v.

**MIDLAND VALLEY RAILROAD COMPANY, a corporation, Defendant.**

Civ. No. 5592.

United States District Court
N. D. Oklahoma.

Sept. 30, 1964.

Farmer, Woolsey, Bailey & Flippo, Tulsa, Okl., for plaintiffs.

Dyer, Powers & Gotcher, Tulsa, Okl., for defendant.

DAUGHERTY, District Judge.

In this case the plaintiffs seek damages from the defendant as the originating carrier for a shipment of fresh green corn which was rejected upon delivery at destination due to spoilage. 1079 bags of fresh green corn are involved. The corn was loaded by plaintiff at Bixby, Oklahoma, where the shipment originated with destination of Denver, Colorado. The shipment was not consigned, according to the Shipping Order dated July 12, 1961, and signed by the plaintiffs. See Plaintiffs' Exhibit 1. The corn was salvaged by the carrier at Denver for $200.00 which sum the carrier has retained. Plaintiffs seek damages for the value of the corn in the amount of $2,158.00.

Plaintiffs bring this action under the Interstate Commerce Act, pertinent provisions of which in 49 U.S.C. § 20(11) provide as follows:

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiv-

ing property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed; * * *."

From the evidence, the following events appear to have occurred in this matter: Plaintiffs loaded the fresh green corn at Bixby, Oklahoma, on July 11, 1961; loading started around 7 A.M. on said date and by 5 P.M. of said date the loading was complete and the car ready for movement; plaintiffs did their own loading and icing using approximately 31,000 pounds of ice; the corn was in bags which were loaded in layers in the car; twelve inches of ice was placed between layers 2 and 3 and also between layers 5 and 6, with 18 inches of ice on top of the load; the corn was delivered in good condition by the shipper to the carrier on July 11, 1961; the Freight Waybill of the defendant, dated July 12, 1961, (Plaintiffs' Exhibit 4), shows the consignee to be: "Agent DRGW Ry Hold for disposition from Shipper" and also showed: "Topped iced with 10000 lbs. ice by shipper Reice if delayed"; another Freight Bill of defendant, dated July 12, 1961, (Plaintiffs' Exhibit 3) shows: "10000 LBS TOP ICE FURNISHED BY SHIPPER REICE IF UNDULY DELAYED", and "31000# TOP ICE FURNISHED"; the car left Bixby, Oklahoma, on July 12th, 1961, and arrived in due course at Denver, Colorado, at 3:50 A.M. on Saturday, July 15, 1961; an outside inspection was made by the car-

rier or its representative at 4 o'clock A.M. on July 15th; at 1:00 o'clock P.M. on said day the railroad through its representative opened the car and estimated 6,000 lbs. of ice remaining, 5,000 lbs. on top and 1,000 lbs. in the body of the load; at 8 A.M. on each, July 16th, July 17th and July 18th, further outside inspections were made, and at 11:30 o'clock A.M. on July 18th the railroad opened the car for the second time, inspected the load and found the top of the load to be visible or without ice, at least in areas, and then placed 6,000 lbs. of top ice on the load; at 2:45 P.M. on July 18th directions were given by the plaintiffs for the car to be delivered to the Fresh Vegetable Packing Company; on July 19th at 8 o'clock A.M. the railroad made a further outside inspection; on Friday, July 21st, the Fresh Vegetable Packing Company refused the corn due to spoilage; at 11:35 A.M. on July 21st a Government inspection was made of the corn with the report showing: "From approximately 4 to 8 inches crushed ice over top of most of load; ice between layers. Remainder of load no ice.", and an average of 55% decay in the corn; thereafter, the corn was sold for salvage for $200.00.

The DRGW Railroad requested disposition instructions from the plaintiffs on July 15th at 10 o'clock A.M. and again on July 18th at 10:20 A.M. The same Railroad requested disposition instructions from the defendant, Midland Valley Railroad Company, on July 16th, and again on July 18th. Disposition instructions were given by plaintiffs at 2:45 P.M. on July 18th.

Plaintiffs contend that the loss was due to the failure of the carriers to follow the instructions of the plaintiff regarding the reicing of the shipment and that such failure occurred when the railroads were carriers and responsible as such under the Interstate Commerce Act and the Bill of Lading between the parties.

The defendant contends that the carrier at destination became a warehouseman immediately upon the arrival of the shipment at Denver and only responsible for proved negligence for which this de-

fendant would not in any event be liable; that since the shipment was a perishable commodity, the carriers are liable only for negligence proven; that the plaintiffs took an unreasonable time to dispose of the shipment and that the defendant should have judgment on its counterclaim for the balance of $202.42 due on the freight bill.

■ The United States Supreme Court in the recent case of Missouri Pacific Railroad Company v. Elmore and Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194, decided May 4, 1964, dealt with a shipment of perishables. In this case the railroad urged that the court adopt a different rule covering the shipment of perishables, but the court refused saying:

> "The parties agree that the liability of a carrier for damage to an interstate shipment is a matter of federal law controlled by federal statutes and decisions. The Carmack Amendment of 1906, § 20(11) of the Interstate Commerce Act, makes carriers liable 'for the full actual loss, damage or injury * * caused by' them to property they transport, and declares unlawful and void, any contract, regulation, tariff, or other attempted means of limiting this liability. It is settled that this statute has two undisputed effects crucial to the issue in this case: First, the statute codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or the nature of the goods.' Bills of Lading, 52 I.C.C. 671, 679; Chesapeake & O. Ry. Co. v. A. F. Thompson Mfg. Co., 270 U.S. 416, 421–423 [46 S.Ct. 318, 319–320, 70 L.Ed. 659, 660, 661]; Adams Express Co. v. Croninger, 226 U.S. 491, 509 [33 S.Ct. 148, 153, 57 L.Ed. 314, 321, 44 L.R.A.,N.S., 257]; Hall & Long v. Railroad Companies, 13 Wall. 367, 372 [20 L.Ed. 594, 596]. Second, the statute declares unlawful and void any 'rule, regulation, or other limitation of any character whatsoever' purporting to limit this liability. See Cincinnati N. O. & Texas Pac. R. Co. v. Rankin, 241 U.S. 319, 326 [36 S.Ct. 555, 557–558, 60 L.Ed. 1022, 1025, L.R.A.1917A 265]; Boston & M. R. R. v. Piper, 246 U.S. 439, 445 [38 S.Ct. 354, 355, 62 L.Ed. 820, 823]. Accordingly, under federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both its freedom from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. Galveston, H. & S. A. R. Co. v. Wallace, 223 U.S. 481, 492 [32 S.Ct. 205, 207, 56 L.Ed. 516, 523]; Chicago & E. I. R. Co. v. Collins Co., 249 U.S. 186, 191 [39 S.Ct. 189, 190, 63 L.Ed. 552, 554]; Chesapeake & O. Ry. Co. v. A. F. Thompson Mfg. Co., 270 U.S. 416, 420–423 [46 S.Ct. 318, 319–320, 70 L.Ed. 659, 660, 661]; Thompson v. James McCarrick Co., 5 Cir., 205 F.2d 897, 900."

In view of the foregoing decision this court finds no merit in the contention of the defendant that because the load was a perishable the carriers are liable only upon plaintiff proving them guilty of negligence in handling the same.

■ After carefully considering all the evidence, the Court is of the opinion and finds that the spoilage involved herein began between the first opening of the car on July 15th and the second opening on July 18th and was caused by a failure of the carriers at destination to properly and timely reice in accordance with the instructions of the shipper. The car was only opened twice by the carriers from the time of loading on July 11th until the

spoilage was definitely ascertained on July 21st. The first time the car was opened was on July 15th at one o'clock P.M. at Denver, and the second time was on July 18th at 11:30 A.M. at Denver. When the car was first opened on July 15th at one o'clock P.M. there remained only 6,000 lbs. of 31,000 lbs. of ice after the lapse of three days and twenty hours. The month was July and outside temperatures reached up into the 90's during the day. By information and instructions shown on the carrier's own Freight Waybill under date of July 12, 1961, there were 10,000 lbs. of top ice and the carrier was under instructions to reice if delayed. In less than four days the top ice had reduced to 5,000 lbs. or was half gone. The car was not opened or iced for another three days, at which time the ice was gone to the point that the top of the load was visible.

It can hardly be disputed that carriers involved are charged with knowledge of information and instructions contained in their own freight bills. It also appears that the originating carrier was furnished with a copy of the Inspection Certificate from the United States Department of Agriculture (See Plaintiffs' Exhibit 2), which contained information as to the loading and icing of the corn on July 11, 1961, by the plaintiffs at Bixby, Oklahoma. Thus when the shipment originated, the carriers had knowledge of the nature of the load, the fact that 31,000 lbs. of ice had been placed in the car with 10,000 lbs of the same placed on top of the load. By an inspection made nearly four days later the carriers had information that at least half of the top ice had melted away and only 1,000 lbs. remained in the body of the load. The carriers also were charged with reicing the load if the shipment was delayed. Yet the railroads waited nearly another full three days, lacking only an hour and a half, before they again saw fit to open the car, inspect the load, and reice. At the end of this three-day wait, it is definite by the railroad's own testimony that by that time the top of the load was visible, which means that the 5,000 lbs. of

top ice estimated on the load three days earlier had for all purposes melted away. This is a negligent failure to properly carry out the shippers' reicing instructions.

Pertinent provisions of the tariffs in effect (See Defendant's Exhibit 1), provide:

"  *   *   * forty-eight hours' (two days) free time will be allowed to  *   *   * partly or completely unload,  *   *   * all commodities",

And,

"On cars held for orders  *   *   * whether such cars have been placed in position to unload or not, time will be computed from the first 7 A.M. after notice of arrival is sent or given to the consignee or party entitled to receive same."

"For the purpose of computing time under these Rules, Saturdays, Sundays and holidays (See Item 25) will be excluded  *   *   *."

Since the shipment arrived on Saturday, July 15th, and notice of arrival was given at 10:00 A.M. on that day, and with Sunday excluded as a holiday, the said 48-hour period of free time in this case would start at 7 A.M. on Monday, July 17th, and end on Wednesday, July 19th at 7 A.M.

The shipping order (bill of lading) Plaintiffs' Exhibit 1, between the parties provides in Section 1(b):

"The carrier's liability shall be that of warehouseman, only,  *   *   * after the expiration of the free time allowed by tariffs lawfully on file (such free time to be computed as therein provided) after notice of the arrival of the property at destination  *   *   *,"

And in Section 4(a):

"Property not removed by the party entitled to receive it within the free time allowed by tariffs, lawfully on file (such free time to be computed as therein provided), after notice of the arrival of the property at destination  *   *   * has been duly sent or given, and after placement of

the property for delivery at destination has been made, may be kept * * * subject to * * * carrier's responsibility as warehouseman, only, * * *."

Thus, from the time this shipment arrived at Denver, Colorado, and through the period of free time, or until July 19th, at 7 o'clock A.M. it appears that by virtue of the provisions of the tariffs in effect and the agreement of the parties as contained in the bill of lading the carriers were responsible as and had the posture of being carriers as opposed to being warehousemen. It further appears that inasmuch as the shipper informed the carriers of the consignee before the expiration of the 48-hour free time period the carrier would continue to be responsible as a carrier and not as a warehouseman until placement of the property for delivery, in this case at the dock of the Fresh Vegetable Packing Company. In addition, during all of this period of time subsequent to arrival at Denver and through the 48-hour free time period and thereafter until the car was placed at the unloading dock of the Fresh Vegetable Packing Company, the carrier would be responsible as such, and would also be responsible to comply with the instructions of the shipper to reice the load if delayed. Under these reicing instructions and a fair and proper interpretation thereof, it would appear that the carriers would be responsible for checking the shipment and reicing as necessary until such time as the shipment was delivered to the dock of the party entitled to receive the same for unloading and certainly during the 48-hour free time period.

Inasmuch as the Court finds from the evidence that the loss occurred prior to 7 A.M. on Wednesday, July 19th, the defendant is liable for the loss of the property involved. The defendant has not shown that the loss was due to one of the five excepted causes relieving carriers of liability. Under the evidence, the corn had a value of $2158.00. Judgment should be entered in favor of plaintiffs and against the defendant for the value of the corn less the balance due on the freight charge. Defendant's counterclaim, should be denied. Counsel will prepare an appropriate judgment in conformity with the foregoing for the signature of the Court and entry herein.