**EXQUISITE FORM INDUSTRIES, INC., Plaintiff,**

v.

**TRANSPORTES RAGAT, S.A. de C.V., Stauffer Chemical Company, Pedro Martinez Mendez, Fernando J. Barrenechea, and Fernando J. Barrenechea E Hijo, Inc., Defendants.**

Civ. A. No. H–80–514.

United States District Court, S.D. Texas, Houston Division.

May 1, 1984.

L. Glen Kratochvil, Houston, Tex., for plaintiff.

Ronald E. Cook, Houston, Tex., Lazaro Garzo-Gongora, Jr., William C. Wright, Laredo, Tex., for defendants.

## ORDER

McDONALD, District Judge.

This cargo damage case was tried to the Court on February 17, 1984. The Court, having thoroughly considered the evidence, the parties' arguments, and the applicable law, now enters its Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52(a).

## FINDINGS OF FACT

1. Exquisite Form Industries, Inc. was the owner of the 263 cases of cotton fabric that are the subject of this lawsuit at all times pertinent to this lawsuit.

2. The 263 cardboard cases of cotton were shipped from Exquisite Form in March, 1979. The cases were destined for Maquiladora de Tlaxcala, S.A. in Tlaxcala, Tlaxcala, Mexico. The cotton was intended for use in manufacturing undergarments.

3. Stauffer Chemical, Inc. shipped 120 drums of phosphorus trichloride ("PCl₃") in March, 1979. The destination of the PCl₃ was Agua Treat, S.A., Xalostoc, Tlaxcala, Mexico.

4. Both the cotton and the PCl₃ arrived via separate transportation at Laredo, Texas, intact and in good condition. Clean bills of lading were issued for both the cotton and the PCl₃.

5. Transportes Ragat, S.A. de C.V. was the owner or lessee of the truck and trailer by which the cotton fabric and PCl₃ were shipped into the interior of Mexico.

6. Fernando J. Barrenechea E Hijo, Inc. was the customs broker and freight forwarder for the cotton fabric and the PCl₃. Fernando J. Barrenechea E Hijo, Inc. is a valid Texas corporation.

7. Fernando J. Barrenechea and Pedro Martinez Mendez are both officers of Fernando J. Barrenechea E Hijo, S.A.

8. Employees of Fernando J. Barrenechea E Hijo, Inc. loaded both the cases of cotton and the PCl₃ onto the same trailer. The decision to load the PCl₃ and the cotton fabric aboard the same truck was made by an employee of Fernando J. Barrenechea E Hijo, Inc., with the knowledge and under the inspection of employees of Fernando J. Barrenechea E Hijo, Inc., and Transportes Ragat, S.A. de C.V.

9. The cases of cotton and drums of PCl₃ were intact and in good condition when they left the workplace of Fernando J. Barrenechea E Hijo, Inc.

10. When the shipment reached Tlaxcala, Mexico, workers found that some PCl₃ had escaped from the drums and permeated some of the cases of cotton. The drums had neither tipped over nor been punctured in transit. How much of the cotton had actually be permeated by PCl₃ was never determined.

11. PCl₃ is a colorless, volatile, corrosive material from which many other chemical compounds are prepared. When PCl₃ comes in contact with even smaller amounts of water and air, it fumes and forms compounds such as hydrochloric acid and phosphorus oxychloride. Were PCl₃ to come into contact with cotton in the presence of air and water, three effects would take place. First, the cotton would be chlorinated and would discolor and fall apart. Second, hydrochloric acid would be created and further corrode the cotton. Third, the cellulose in the cotton would be weakened. In sum, the cotton would be unfit for use in weaving apparel. Washing the cotton could remove some of the PCl₃, but could also form more acid and thus hasten corrosion.

12. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1765 was $947.37.

13. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1766 was $14,517.05.

14. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1767 was $11.20.

15. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1768 was $736.37.

16. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1769 was $679.73.

17. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1770 was $261.57.

18. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1771 was $5,067.94.

19. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1772 was $124.07.

20. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1773 was $322.89.

21. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1774 was $905.67.

22. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1775 was $104.90.

23. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1776 was $5,457.10.

24. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1778 was $2,752.99.

25. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1779 was $10,-685.99.

26. The fair market value of cotton fabric shipped under Exquisite Form Industries' Invoice No. MCC–1780 was $9,695.43.

27. The cotton fabric was transported from Plaintiff's facility in Pelham Manor, New York to Kennedy International Airport by Shadow Trucking Company for a cost of $186.45.

28. The cotton fabric was flown from New York to San Antonio, Texas by Eastern Airlines for a cost of $1,243.

29. The cotton fabric was moved by truck from San Antonio to Laredo for a cost of $285.60.

30. Stauffer Chemical Company placed a warning label identical to Exhibit 26 on each drum of PCl₃.

31. The total market value of the .163 cases of cotton fabric which the plaintiff alleges to have been damaged as a basis for bringing this lawsuit was $52,270.27.

32. Rogelio Martinez Rodriguez, an automobile damage insurance adjustor from Nuevo Laredo, Mexico, inspected the damaged cotton. Martinez Rodriguez neither counted nor closely examined the cases of cotton. The entire shipment was burned in Nuevo Laredo on November 10, 1979.

33. Exquisite Form Industries, Inc. was paid $59,179.80 for its loss by Travelers Insurance Company.

34. Travelers Insurance Company is subrogated to the rights of Exquisite Form Industries, Inc. concerning the loss which is the basis of this action.

35. Any Finding of Fact that is a Conclusion of Law is hereby so deemed.

## CONCLUSION OF LAW

■ 1. Defendants Fernando J. Barrenechea and Pedro Martinez Mendez acted in regard to the situation giving rise to the instant lawsuit as agents of a valid corporation and are therefore shielded from personal liability. *See* 15 Tex.Jur.3d *Corporations* § 289 (1981) and cases cited *infra.*

■ 2. A shipper of goods in interstate commerce is under a duty to exercise adequate care in packaging and labelling its cargo. *Masonite Corp. v. Norfolk & W. Ry. Co.,* 601 F.2d 724 (4th Cir.1979); *E. Motor Express, Inc. v. A. Maschmeijer, Jr. Inc.,* 247 F.2d 826 (2d Cir.1957).

■ 3. Defendant Stauffer Chemical was not negligent in regard to shipment of drums of PCl₃ to Tlaxcala. Plaintiff has neither alleged nor proved that the drums in which the PCl₃ was shipped were defectively packaged or labelled or were inherently inadequate containers in which to ship PCl₃, and Defendant Stauffer had no control over the drums at the time they were loaded.

■ 4. Plaintiff's contention that Defendant Stauffer's liability is established by *res ipsa loquitur* is untenable. In order to establish liability by *res ipsa,* a plaintiff must prove both that the accident complained of would not ordinarily occur in the absence of negligence and that the instrumentality causing the injury was under the defendant's management and control. *Marathon Oil Co. v. Sterner,* 632 S.W.2d 571, 573 (Tex.1982); *Oliver v. Hutson,* 596 S.W.2d 628 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). In the case at bar, Stauffer indisputably had no control over the drums at the time in which they leaked.

■ 5. A freight forwarder owes the same duties to a shipper as does a common carrier. *Chicago, Milwaukee, St. Paul & Pac. Railroad Co. v. Acme Fast Freight, Inc.,* 336 U.S. 465, 469, 69 S.Ct. 692, 694, 93 L.Ed. 817 (1949). Thus, while cargo is in the possession of a carrier or freight forwarder, that carrier or freight forwarder virtually insures the good condition of the

cargo. *Missouri Pac. Railroad Co. v. Elmore & Stahl,* 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *Chicago & E.I.R. Co. v. Collins Produce Co.,* 249 U.S. 186, 39 S.Ct. 189, 63 L.Ed. 552 (1919). However, once the carrier or freight forwarder has delivered the cargo, strict liability ceases. Liability must then depend on the negligence of the party who delivered the goods. *American Trucking Co. v. Iowa Beef Processors,* 607 S.W.2d 307 (Tex.Civ. App.—Eastland 1980, writ ref'd n.r.e.); *Chief Freight Lines Co. v. Holiday Inns of Am.,* 469 S.W.2d 413, 417 (Tex.Civ.App.— Dallas 1971, no writ hist.) and cases cited *infra. See generally* 11 Tex.Jur.3d *Carriers* § 3451. ("Thus, if the carrier's common-law liability ... has terminated, at the time of the loss or injury ... the test of liability is whether the carrier was guilty of actionable negligence").

■ 6. In the case at bar, Plaintiff has adduced no proof that Defendant Fernando J. Barrenechea E Hijo, S.A. was negligent. Plaintiff again relies on the *res ipsa* doctrine in order to prove liability, and again that reliance is misplaced. In order to conclude under *res ipsa* that a defendant's negligence caused an accident, "the likelihood of other causes [of the accident] must be so reduced that the [fact-finder] can reasonably find that the negligence, if any, was committed by the defendant." *Marathon Oil,* 632 S.W.2d at 574[2]. *Accord, Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 251 (Tex.1974). In the case at bar, Plaintiff has not demonstrated in any way that it was unreasonable to load the chemicals with the cotton or that Defendant could not reasonably rely on the solidity of the drums. Plaintiff's bare assertion that Defendant's conduct was negligent will not meet Plaintiff's burden of proof. In addition, the leakage could have been caused by any one of a number of events that occurred after the truck was loaded, *e.g.,* unforeseeably bad driving on the part of the shipper. Plaintiff has offered no evidence to eliminate the myriad other possible causes for the damage that resulted.

7. All Conclusions of Law that are Findings of Fact are hereby so deemed.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that the foregoing be and hereby is adopted as this Court's Findings of Fact and Conclusions of Law, that Plaintiff take nothing by its suit, and that this cause be DISMISSED with prejudice.

The Clerk shall file this Order and provide a true copy to counsels for all parties.