**L. E. WHITLOCK TRUCK SERVICE, INC., a Kansas corporation, Appellant,**

v.

**REGAL DRILLING COMPANY, a Colorado corporation, Appellee.**

**No. 7334.**

United States Court of Appeals Tenth Circuit.

June 18, 1964.

James J. Delaney, Denver, Colo. (Delaney & Costello, Denver, Colo., were with him on the brief), for appellant.

David C. Knowlton, Denver, Colo. (Downing & Knowlton, and Richard Downing, Jr., Denver, Colo., were with him on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

This is an action to recover for damages to an oil well drilling rig incurred while it was being transported by the defendant. The matter was tried before the United States District Court for the District of Colorado without a jury, and

the court gave judgment for the plaintiff, and for the defendant on its counterclaim for transportation charges.

The plaintiff-appellee is an oil well drilling contractor which operated only with the drilling rig in question. The defendant-appellant is engaged in the transportation of oil field equipment, and holds an irregular route common carrier permit from the Interstate Commerce Commission.

The appellee engaged the appellant to transport its complete Unit 15 rotary-type drilling rig from a location in Cheyenne County, Nebraska, to a new drilling site in Logan County, Colorado, a distance of approximately seventy-five miles. The appellant had previously moved appellee's drilling rig a distance of thirty to forty-five miles. The previous move, as well as the one in question, was accomplished by moving the drilling mast or derrick without disassembling it. This was done by placing one end of the derrick on a truck which moves forward in the normal manner while the other end is placed on the rear of another truck which moves backward. This is referred to in the record as the "two-truck" method. The derrick is a steel tower weighing forty thousand pounds and of approximately one hundred twenty-seven feet in length. The base is fifteen feet in width. It is possible as an alternate method to disassemble the derrick and move it in several sections. On the move in question, the two-truck method was being used along a relatively narrow road, considering the width of the load, when an oncoming car required the leading truck to pull off to allow it to pass. The back-up truck also moved over to the right side, but when it did so, the shoulder of the highway gave way under its wheels. The truck and the load then toppled into the ditch pulling the lead truck with it. This upset caused such damage to the derrick that it was necessary to transport it to a plant in Tulsa, Oklahoma, for repair. The accident occurred on November 10, 1961, and the derrick after being repaired was returned to a new drilling location in Mor-

gan County, Colorado, and was put into service on November 28, 1961. The appellee brought the action to recover the costs of repairing the rig and for loss of earnings while the rig was out of service.

The record shows that at the time the drilling equipment was delivered to the appellant for transportation, it was in serviceable condition, and that the damage caused to the rig by the upset put it out of service for the period indicated. The record shows further that the appellant was experienced in the transportation of oil field equipment and was aware of the nature of appellee's business.

The trial court awarded the appellee damages in the amount of $9,176.80, of which $3,500.00 represented net income from the drilling operations it would have earned during the seventeen-day period; $3,910.00 was unrecoverable fixed costs or charges for the seventeen-day period; $1,159.05 transportation cost of the derrick to Tulsa, Oklahoma, for repair, and $707.75 for its return to the next drilling location following the repair. The court further awarded the defendant judgment on its counterclaim in the sum of $7,039.12 for transportation charges.

The appellant urges on this appeal that the trial court was in error in assuming that it was liable as an insurer, and in finding that appellee should recover when appellant was free from negligence although appellee based its action on negligence.

The trial court based its conclusion on a construction of 49 U.S.C.A. § 20 and on common law principles. The statute referred to is the Carmack Amendment, and its principal function is to permit a shipper in interstate commerce to bring an action against the initial carrier to recover for damages to the shipment whether such damages occurred while the goods were in the hands of the initial carrier or connecting carriers. New York, Philadelphia & Norfolk R.R. Co. v. Peninsula Produce Exchange, 240 U.S. 34, 36 S.Ct. 230, 60 L.

Ed. 511. Prior to the amendment, it was necessary for the shipper to bring an action against the carrier in whose hands the property was damaged. In the case at bar, there was of course only one carrier involved, but it is necessary to consider the Carmack Amendment to determine whether it changes or continues in effect the common law applicable to the liability of carriers.

On the shipment here concerned, no bill of lading was issued, but under the facts here present one may be implied.

At common law a common carrier undertook to carry the shipment safely, and it was liable for all loss or injury excepting only that due to acts of God, public enemy, and those arising from the inherent nature of the goods transported or resulting from the fault of the shipper. It was also a rule of common law that as to these excepted causes of damage the carrier could nevertheless be held liable if it were negligent. The carrier was liable for damages whether negligent or not if the loss was not due to the excepted causes. Therefore a carrier could not escape liability by a showing of the absence of negligence on its part. Chesapeake & Ohio Ry. Co. v. Thompson Mfg. Co., 270 U.S. 416, 46 S.Ct. 318, 70 L.Ed. 659.

In Secretary of Agriculture v. United States, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173, the Court considered a similar question and found that the Interstate Commerce Commission was prevented from approving tariffs which limited the common law liability of the carrier for damage. It has been held that a prima facie case has been made under the Carmack Amendment when the shipper shows that the shipment was in good condition when delivered to the carrier and further that the carrier could not escape liability if the goods are delivered in damaged condition, by showing that it was not negligent in handling the shipment. Thus the Carmack Amendment codifies the common law rule of the carrier's liability, and the federal law applies. Missouri Pacific R.R. Co.

v. Elmore & Stahl, 84 S.Ct. 1142 (1964); Secretary of Agriculture v. United States, supra. The Supreme Court has held that a carrier is not an absolute insurer, but is liable if the shipper makes a prima facie case and the carrier does not meet its burden to show both its freedom from negligence and that the loss was due to one of the causes excepted by the common law rule. The cases involving perishable goods are not distinguished from those where durable goods are transported. Missouri Pacific R.R. Co. v. Elmore & Stahl, supra.

Thus to establish the carrier's liability, it is necessary only for the claimant to show the carrier's receipt of the shipment in apparent good order, and the delivery or release of the shipment by the carrier in damaged condition. This being shown, the prima facie case is established and the burden is on the carrier to prove that the shipment was not delivered in good order, that it was delivered by it in good condition, or that the excepted causes were applicable, and it was free of negligence. United States v. Mississippi Valley Barge Line Co., 285 F.2d 381 (8th Cir.). The Carmack Amendment thus does not change the common law rule. The purpose of the amendment is to permit the shipper to sue the initial carrier, as mentioned above. The effect of the amendment was discussed in Missouri Pacific R.R. Co. v. Elmore & Stahl, supra.

The trial court referred to the carrier as an insurer, but this must be taken to mean not an absolute insurer but liable despite negligence in accordance with the common law rule.

The appellant also urges that the appellee directed that the rig be transported by the "two-truck" method and that it is undisputed that in transporting equipment by this method, the likelihood of an accident is greater than it would have been had the equipment been disassembled and the parts carried on separate trucks. The appellant thus seeks to show the shipper "caused" the damages and to thereby place the case within one

**492**

of the "excepted causes." The court found however that the allegations by the appellant that the appellee had directed the method of shipment were not true, and found that the accident did not result from circumstances or hazards created by the appellee. There was a conflict of evidence on whether or not the appellee's foreman had specifically instructed the appellant's foreman to transport the rig by the two-truck method. As indicated above the court found that the appellee did not so instruct the appellant, and this finding is supported by the record.

■ The appellant urges that the damages awarded were not supported by the evidence and in any event were excessive. There is adequate testimony in the record to support the award of special damages. The appellant specialized in and was experienced in the hauling of oil well equipment and was aware of the importance of time to those engaged in the drilling business. There is adequate evidence in the record to support the finding that the appellant knew of the need and the importance to the appellee of delivery of the rig on time and of damages which would result in the event appellee did not have the use of it. The appellant knew that the appellee had only the one drilling rig. Thus the appellant knew the circumstances upon which the special damages here awarded are based. Atchison, Topeka & Santa Fe Ry. Co. v. Jarboe Livestock Commission Co., 159 F.2d 527 (10th Cir.).

■ The appellant further argues that the damages awarded were remote and were speculative. We believe that the record supports the findings of the trial court in this respect. The business concerned was one which had been in existence for some time and had a profit history. Wells Truckways v. Burch, 247 F.2d 194 (10th Cir.); Baer Bros. Land & Cattle Co. v. Palmer, 158 F.2d 278 (10th Cir.); Hedrick v. Perry, 102 F.2d 802 (10th Cir.); United States v. Griffith, Gornall & Carman, Inc., 210 F.2d 11 (10th Cir.).

Affirmed.