**SUPER SERVICE MOTOR FREIGHT CO., Inc., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 15872.**

United States Court of Appeals
Sixth Circuit.

Aug. 13, 1965.

Frederick B. Abramson, Department of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Attorney, Department of Justice, Washington, D. C., Kenneth Harwell, U. S. Atty., Nashville, Tenn., on brief, for appellant.

John K. Maddin, Jr., Nashville, Tenn., Gracey, Buck, Maddin & Cowan, Nashville, Tenn., on brief, for appellee.

Before PHILLIPS and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Here plaintiff, a common carrier truck line, brought suit against the United States of America to recover charges for freight it had hauled. The United States defended by asserting setoff and counterclaim for damages which exceeded plaintiff's charges.

The damage was done to a camera which the United States shipped from Fort Monmouth, New Jersey, to Fort Sill, Oklahoma. On arrival it was found to be damaged beyond repair.

It is conceded that if the United States prevails on the setoff and counterclaim, the damage of $3,515.45 would wipe out the $3,144.56 of freight bills and leave plaintiff owing $370.89.

Plaintiff's proofs tended to show that the camera had been negligently packaged for shipment.

Defendant's proofs tended to show that the package had been negligently handled.

The trial judge set forth this legal standard for determining the issues:

"(4) The burden is on the shipper to show that the article was delivered to the carrrier in good condition and arrived in a damaged condition. This establishes a prima facie case for the shipper.

"(5) The burden is then on the carrier to show that the damage resulted from a cause which is within the common-law exceptions, e. g., that the damage was the result of the shipper's defective packaging. Having brought the case within this ex-

ception to its absolute liability, the carrier need go no further. The burden is then on the shipper to prove that notwithstanding the defective packaging, the injury was the proximate result of negligence or lack of due care on the part of the carrier: * * * "

As we read the District Judge's findings, he assumed that the shipper had carried its burden of proving delivery to the carrier in good condition, arrival in damaged condition, and damages. He found that the carrier had then carried its burden of proving that the packaging was defective. He then found that the shipper had failed in carrying a reshifted burden of proof that the damage was due to the carrier's negligence in handling rather than to its own negligence in packaging.

We do not think, however, that this second shift of the burden of proof referred to in the District Judge's opinion is an accurate statement of the law as interpreted by the Supreme Court in the case of Missouri Pacific Railroad Company v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964), which was announced after the decision of the District Court in the present case.

Section 20(11) of the Interstate Commerce Act of 1887, as amended, (the Carmack Amendment) provides:

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; * * * " 49 U.S.C. § 20(11).

With respect to this statute the Supreme Court of the United States has said:

"It is conceded that § 20(11) codifies the common-law rule making a carrier liable, without proof of negligence, for all damage to the goods transported by it, unless it affirmatively shows that the damage was occasioned by the shipper, acts of God, the public enemy, public authority, or the inherent vice or nature of the commodity. * * * " Secretary of Agriculture v. United States, 350 U.S. 162, 165–166, n. 9, 76 S.Ct. 244, 247, 100 L.Ed. 173 (1956).

In Missouri Pacific Railroad Company v. Elmore & Stahl, supra, the Supreme Court said:

"Accordingly, under federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. Galveston, H. & S. A. R. Co. v. Wallace, 223 U.S. 481, 492, 32 S.Ct. 205, 207, 56, L.Ed. 516; Chicago & E. I. R. Co. v. Collins [Products] Co., 249 U.S. 186, 191, 39 S.Ct. 189, 190, 63 L.Ed. 552; Chesapeake & O. Ry. Co. v. A. F. Thompson Mfg. Co., 270 U.S. 416, 420–423, 46 S.Ct. 318, 319–320, 70 L.Ed. 659; Thompson v. James G. McCarrick Co., 5 Cir., 205 F.2d 897, 900." Missouri Pacific Railroad Company

v. Elmore & Stahl, supra, 377 U.S. at 138, 84 S.Ct. at 1145.

Thus once the shipper has proved a prima facie case, the burden of proof shifts to the carrier and remains there.

The Tenth Circuit applied the Stahl case in reaching the same conclusion in L. E. Whitlock Truck Service, Inc. v. Regal Drilling Company, 333 F.2d 488 (1964), saying:

"Thus the Carmack Amendment codifies the common law rule of the carrier's liability, and the federal law applies. Missouri Pacific R.R. Co. v. Elmore & Stahl, 84 S.Ct. 1142 (1964); Secretary of Agriculture v. United States, supra. The Supreme Court has held that a carrier is not an absolute insurer, but is liable if the shipper makes a prima facie case and the carrier does not meet its burden to show both its freedom from negligence and that the loss was due to one of the causes excepted by the common law rule. The cases involving perishable goods are not distinguished from those where durable goods are transported. Missouri Pacific R.R. Co. v. Elmore & Stahl, supra.

"Thus to establish the carrier's liability, it is necessary only for the claimant to show the carrier's receipt of the shipment in apparent good order, and the delivery or release of the shipment by the carrier in damaged condition. This being shown, the prima facie case is established and the burden is on the carrier to prove that the shipment was not delivered in good order, that it was delivered by it in good condition, or that the excepted causes were applicable, and it was free of negligence." 333 F.2d at 491.

Although we recognize that contrary views have been expressed in earlier decisions,[1] this court is bound by the latest pronouncement of the Supreme Court on this subject in the Stahl case.

The cases relied upon by appellee we view as ones wherein the carrier clearly established that the damage was occasioned by the shipper's own negligence. See Northwestern Marble & Tile Co. v. Williams, 128 Minn. 514, 151 N.W. 419, L.R.A.1915D, 1077 (1915); Hoover Motor Express Co. v. United States, 262 F. 2d 832 (C.A. 6, 1959); Blytheville Cotton Oil Co. v. Kurn, 155 F.2d 467 (C.A. 6, 1946).

Since the Stahl case—which we consider controlling of this case—has been decided since the District Court's judgment, we remand for further consideration and findings in the light of the Stahl case and this opinion.

The judgment is vacated and the case is remanded to the District Court.

McALLISTER, Senior Circuit Judge, dissenting. The issue in this case is whether the burden of proof was upon the shipper to establish a carrier's liability for damages to an article transported in interstate commerce, or whether the burden of proof was upon the carrier to exonerate itself from such liability.

The Carmack Amendment to the Hepburn Act (Interstate Commerce Act of 1887, as amended) Title 49 U.S.C.A. § 20 (11), is here applicable for the reason that, in interstate commerce shipments, an initial carrier is, by this statute, made liable to the shipper for damages caused by itself and all connecting carriers; and all interstate shippers and carriers are, by the Carmack Amendment, subject to federal law. Aside from these considerations and certain statutory provisions of limitation of liability, not here involved, the liability of the carrier in this case is the same as that of a carrier at common law.

The trial court found that the burden of proof was upon the shipper to prove

1. See e. g. Schnell v. The Vallescura, 293 U.S. 296, 304, 55 S.Ct. 194, 79 L.Ed. 373; 14 Am.Jr.2d, Carriers, § 528–530, 626– 627; Annotations, 53 A.L.R. 996; 81 A.L.R. 811; 106 A.L.R. 1156 and 115 A.L.R. 1274.

delivery to the carrier in good condition, and arrival to the consignee in damaged condition. The court also found that the carrier had successfully carried the burden of proving that the packaging of the shipment—in this case, a delicate piece of mechanism—was defective when delivered to the carrier, with no adequate bracing, and in an upside down position. It stated, as one of the applicable rules of law, that when the carrier has shown that the damage was the result of the shipper's defective packaging, the carrier need go no further, and that the burden was then on the shipper to prove that, notwithstanding the defective packaging, the damage was the proximate result of negligence or lack of due care on the part of the carrier. The trial court held, in effect, that, since the carrier had sustained its burden of proving that the damage resulted from improper packaging, the shipper then had the burden of proving that the damage was due to the carrier's negligence in handling the shipment; and that since the shipper had not carried this burden of proof, a judgment was entered in favor of the carrier.

In the accompanying opinion of Judge Edwards, it is held that, after the carrier had sustained the burden of showing that the packaging was defective, the trial court was in error in holding that the burden was then on the shipper to prove that the injury was the proximate result of negligence or lack of due care on the part of the carrier. This "second shift of the burden of proof," is as stated in the accompanying opinion, not an accurate statement of the law; but the proper rule, it is said, is that, once a shipper has proved a prima facie case, the burden of proof shifts to the carrier *and remains there*. From this difference of opinion between the trial court and the view of Judge Edwards, there arises, at least to some extent, the determining issue in this case.

The crucial difference between the views expressed in the accompanying opinion by Judge Edwards, and the views expressed in this dissenting opinion, is that Judge Edwards holds that when a shipper has made a prima facie case, the burden of proof shifts to the carrier to exonerate itself from liability, and *remains there,* no matter what the amount or quality of the evidence submitted by the carrier. In this dissenting opinion, it is held that when a shipper has established a prima facie case, the burden of proof then shifts to the carrier—*but does not necessarily remain there;* and that, after the carrier has produced evidence showing that the damage was due to an excepted clause and that it was free from negligence—in order to meet the prima facie case of the shipper—then the burden of proof of ultimately proving the case, upon the whole evidence, rests upon the shipper, who had the burden of proof at the commencement of the action. In this case the principal opinion holds that reversible error resulted from the trial court's holding that, upon the whole evidence, the burden of proof was upon the shipper.

The facts are of controlling importance: Appellant, United States of America, as shipper, contracted with appellee, Super Service Motor Freight Company, Inc., as carrier, to transport a Delft Still Picture Camera from Fort Monmouth, New Jersey, to Fort Sill, Oklahoma. The camera was delivered by the shipper to appellee carrier, having been prepared for shipment by government employees who packaged it in a wooden case which was placed inside a heavy fiberboard carton. It was transported, first by appellee shipper, and thereafter by connecting carriers, to its destination, where it was delivered to the consignee. When the carton and box containing the camera were opened, it was discovered that the camera was almost completely smashed, resulting in virtually a total loss.

Appellant contends that it established the delivery of the camera to the carrier in good condition and receipt by the consignee in a damaged condition; that the carrier had the burden of establishing that the damage was occasioned by improper packaging; that the carrier failed to establish that the damage was caused by defective packaging rather than from

some other cause; and that it is accordingly entitled to a judgment for the resulting damages.

Appellee carrier contended that the camera was improperly packaged by appellant, and that the damage to the camera was the result of such packaging; that, as carrier, it was not liable for damage resulting from the shipper's improper packaging; that the burden was upon the shipper to show delivery of the camera to the carrier in good condition, which included proper packaging; that failure to prove such delivery in good condition, under the common law, absolves the carrier from liability resulting from improper packaging, unless the shipper subsequently carries the burden of proving that the damage resulted from the carrier's negligent handling, which was not proved in this case.

The camera, consisting of delicate, expensive equipment, weighing fifty pounds, and of a value of more than $3,500, was packaged by the government employee, in an inner wooden case. This case was thereafter placed in an outer fiberboard carton; and the manner in which it was packed in the case, and in the carton, are decisive factors in the controversy.

On the inside of the inner wooden box, holding the camera, were four wooden brackets, or mounting blocks. These four mounting blocks rested on the bottom of the wooden case; and the mounting blocks, or brackets, were fastened with glue to the four sides of the case. On these mounting blocks, which were lined with felt-covered foam rubber, the camera was seated. When the camera was seated on the mounting blocks, it was held in the box, so that it would not shift about, by wing nuts which protruded from the top of each mounting block, and which were tightened down to hold the camera in position. The lens of the camera faced the top of the wooden case. However, there was a space between the lens and the top of the case.

It would appear that the above method would have been a most suitable way of safely packaging the camera in the case, providing that the case was carried and transported with the camera seated on the mounting blocks and fastened by the wing nuts to the blocks, which were glued to the side of the case, as they rested on the bottom of the case.

However, when the wooden case containing the camera so packaged was placed in the outer fiberboard carton for shipping, it was packaged therein presumably by a different government employee than the one who had packaged the camera in the wooden case, and in such a manner that the inner wooden case would be upside down when the fiberboard carton was rightside up as would appear from all indications of the labels and markings which were placed by the government employee on the fiberboard carton. In other words, if, in handling the package in transportation, the carrier would place the carton rightside up, according to its external markings and labels, the wooden case inside the carton would be upside down, and, of course, the camera inside the wooden case would likewise be upside down.

It is to be observed that, unless the carrier took note of the markings and labels on the fiberboard carton, and placed the carton rightside up in transporting it, the carrier would be clearly culpable in neglecting to pay any attention to the labels and markings on the carton, as these were the only indications on the shipment showing whether the package was being carried rightside up or not.

But if the carrier did transport the fiberboard carton rightside up, according to its external markings and labels, the result would be that the wooden case and the camera inside the carton would be carried upside down.

All the artful work of the government employee *in packaging the camera in the wooden case* was directed to preventing damage to the camera while being transported rightside up; and this was the purpose of arranging for wooden supports resting on the bottom of the case, gluing them to the side of the case, seating the camera on such supports, which were covered with foam rubber, and fastening the seated camera to the supports

by means of the wing nuts. If the camera were transported rightside up, it would be securely seated on blocks resting on the bottom of the case and glued to its sides. If the case were carried upside down, the whole purpose of seating the camera securely on blocks resting on the bottom of the case would be frustrated. Instead of being securely seated, the camera, if carried upside down, would be hanging midway between the top and the bottom of the case. It would not be seated on the supporting blocks. The packaging within the wooden case on the interior supports was designed to absorb the downward shock, and if the camera were transported upside down, there would be nothing to give any support to the downward weight of fifty pounds but the glue which fastened the supports to the sides of the case.

Every precaution of the government in packaging the camera as it did, in the wooden case, was directed to avoid damage to the camera as long as it was transported rightside up.

The reason every such precaution was taken to avoid damage, as long as the camera was transported rightside up, was because in such a position, the camera was safely packaged and seated against all downward pressures that might result from jarring during transportation. No precaution was taken by the government in packaging the camera in the wooden case, directed to avoid damage to the camera if it were transported upside down.

The reason no precaution was taken to avoid damage, if the camera were transported upside down, was obviously because the government employee, engaged in packaging the camera in the wooden case, could not conceive that it would be transported, through the negligence of another government employee, upside down. The transportation of this heavy camera upside down, suspended midway in a box, and held only by narrow wooden supports glued to the sides of the box, and to be carried in a truck over roads and highways for a distance of 1,200 miles, would seem almost inevitably to result in the supports or anchors for the camera becoming unglued and giving way under the heavy weight, and the impact and shock of the jarring of highway transportation, and so result in the camera crashing to the underside of the wooden box, smashing the lens and other equipment; and this, in all probability, is what happened in this case. When the carton was finally delivered to the consignee, the inspection papers signed by the Warrant Officer stated on the "Report of concealed loss or damage inspection after delivery": "Lens broken, camera case dented, wood carrying case burst on top, anchors for camera unglued."

As to the general applicable law, in such cases, in Boh Bros. Constr. Co. v. Perry Heavy Haulers, 72 F.Supp. 102, 104 (D.C.E.D.La.), in a case involving the Carmack Amendment, Judge Borah declared:

"The general rule is well stated in the annotations in 81 A.L.R. 811, as follows:

" 'In the absence of limitation by contract, a carrier's common law liability for the safe carriage of goods is that of an insurer, except when the injury or damage to goods arises from certain excepted causes, namely, an act of God or the public enemy, the inherent nature or vice of the goods themselves, and the acts of the shipper. Within the last named exception fall such acts as the improper or faulty packing and preparation for shipment; and it may be stated as a general rule, subject to qualifications hereinafter noted, that, when the loss or injury occurs by reason of the fact that the goods have been improperly or defectively packed, the carrier is relieved of liability '

"It was plaintiff's duty to prepare the machine for shipment and whether or not the damage resulted from its negligence in loading is a question of fact which must be determined from the evidence."

In 14 American Jurisprudence 2d, Section 529, under the heading of Carriers, the rule is stated as follows:

"Improper packing or preparation for shipment ordinarily constitutes such a fault on the part of the shipper as will relieve a common carrier from its almost absolute common-law liability for goods it undertakes to carry, at least where the defect is latent and not apparent upon ordinary observation."

It is, of course, the law that a carrier, under the Carmack Amendment, is liable without proof of negligence for all damage to the goods transported, unless it affirmatively shows that the damage was occasioned without fault on its part, and was due to an excepted cause—in this case, improper packing. See note in Secretary of Agriculture v. United States, et al., 350 U.S. 162, 165, 76 S.Ct. 244, 100 L.Ed. 173.

We come then to the disputed issue of the burden of proof.

In Schnell et al. v. The Vallescura, 293 U.S. 296, 304, 55 S.Ct. 194, 196, 79 L.Ed. 373, Mr. Justice Stone, speaking for the Court, declared: "It is commonly said that when the carrier succeeds in establishing that the injury is from an excepted cause, the burden is then on the shipper to show that that cause would not have produced the injury but for the carrier's negligence in failing to guard against it. Such we may assume the rule to be, at least to the extent of requiring the shipper to give evidence of negligence where the carrier has sustained the burden of showing that the immediate cause of the loss or injury is an excepted peril. Clark v. Barnwell, 12 How. 272, 280, 13 L.Ed. 985; Memphis & C. Railroad Co. v. Reeves, 10 Wall. 176, 189, 190, 19 L.Ed. 909; Western Transportation Co. v. Downer, 11 Wall. 129, 134, 20 L.Ed. 160; The Victory & The Plymothian, 168 U.S. 410, 423, 18 S.Ct. 149, 42 L.Ed. 519; Cau v. Texas & Pacific Ry. Co., 194 U.S. 427, 432, 24 S.Ct. 663, 48 L.Ed. 1053; The Malcolm Baxter, 277 U.S. 323, 334, 48 S.Ct. 516, 72 L.Ed. 901."

Among the cases cited by Mr. Justice Stone in The Vallescura case, supra, the Court, in Clark et al. v. Barnwell et al., 12 How. 272, 280, 13 L.Ed. 985, held that where goods are shipped and the usual bill of lading given, "promising to deliver them in good order, the dangers of the seas excepted," and the goods are found to be damaged, the onus probandi is upon the carrier to show that the injury was occasioned by one of the excepted causes. However, the Court further held that, although the injury may have been occasioned by one of the excepted causes, yet the carrier is responsible if the injury might have been avoided, by the exercise of reasonable skill and attention on the part of the persons employed in the conveyance of the goods. "But," the Court said, "in this stage and posture of the case, the burden is upon the plaintiff [shipper] to establish the negligence, as the affirmative lies upon him."

In Western Transportation Company v. Downer, 11 Wall. 129, 20 L.Ed. 160, it was held that when a carrier showed that a loss of goods was occasioned by an excepted cause, the shipper might show that the loss might have been avoided by the exercise of proper care and skill on the part of the defendant; but the burden of establishing the absence of such care and skill on the part of the carrier rested upon the shipper.

In Cau v. Texas & Pacific Ry. Co., 194 U.S. 427, 24 S.Ct. 663, 48 L.Ed. 1053, it was held that while the burden may be on the carrier to show that the damage resulted from the excepted cause, after that has been shown, the burden is on the shipper to show that it occurred by the carrier's own negligence from which it could not be exempted. And in The Malcolm Baxter, Jr., 277 U.S. 323, 334, 48 S.Ct. 516, 72 L.Ed. 901, the Court held that a carrier having brought itself within the excepted clause, the burden was on the shipper to show that the negligence was the cause of or contributed to the loss.

The foregoing decisions of the Supreme Court clearly stand for the rule that when the shipper has established a prima facie

case, the burden is on the carrier to show that the damage has resulted from an excepted cause, but, after that has been shown, the burden is on the shipper to show that it occurred as a result of the carrier's negligence.

Appellant shipper, however, insists that after it has proved a prima facie case, and the carrier thereafter proves that the damage resulted from an excepted cause, the burden of proof, on the whole case, is upon the carrier, and that there is no burden of proof on the shipper to establish its case, other than the prima facie case.

In support of its contention, appellant relies upon Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194, in which it was stated: "Accordingly, under federal law, in an action to recover from a carrier for damage to a shipment the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability."

Although the Court in the Stahl case, supra, stated that after the shipper established its case by showing delivery in good condition, and arrival in damaged condition, and that thereupon the burden of proof is upon the carrier to show that it was free from negligence and that the damage was due to an excepted cause, it is my view that the Court did not mean that the shipper, by proving a prima facie case, was relieved of the burden of proof, in the sense of ultimately proving or establishing his case. Rather, it appears to me that the Court in the Stahl case, in using the term, "burden of proof," was using it in the sense of the carrier's burden of proceeding or going forward, or the necessity on its part of producing evidence to meet that already produced. Wigmore, in his great work on Evidence, refers to the various meanings often given to the term, "burden of proof," and

mentions a "second meaning" as the duty of producing evidence. See 9 Wigmore on Evidence, 3d Ed., Sections 2485 and 2487.

In Delaware Coach Co. v. Savage et al., 81 F.Supp. 293, 296, 297 (D.C.Del.), Judge Rodney illuminated the subject in referring to the authorities as follows:

"Wigmore in his elaborate treatise shows the shifting and progressive nature of the burden of producing evidence for the satisfaction of the judge as well as the permanent and non-shifting nature of the burden of proof (the non-persuasion of the jury), which remains at all times with the proponent of the issue, to be established by a preponderance of the evidence. 9 Wigmore on Evidence, 3d Ed., Sec. 2485–2489. See also 2 Chamberlayne, Modern Law of Evidence, Sec. 940, etc.; McKelvey on Evidence, 75.

"In Board of Education v. Makely, 139 N.C. 31, 51 S.E. 784, and Shepard v. Western Union Telegraph Co., 143 N.C. 244, 55 S.E. 704, 118 Am. St.Rep. 796, is cited a terse and apt quotation from 1 Elliott on Evidence, as follows: 'The burden of the issue, that is, the burden of proof, in the sense of ultimately proving or establishing the issue or case of the party upon which such burden rests, as distinguished from the burden or duty of going forward and producing evidence, never shifts, but the burden or duty of proceeding or going forward often does shift from one party to the other, and sometimes back again. Thus, when the actor has gone forward and made a prima facie case, the other party is compelled in turn to go forward or lose his case, and in this sense the burden shifts to him. So the burden of going forward may, as to some particular matter, shift again to the first party in response to the call of a prima facie case or presumption in favor of the second party. But the party who has not the burden of the issue is not bound to disprove the

actor's case by a preponderance of the evidence, for the actor must fail if, upon the whole evidence, he does not have a preponderance, no matter whether it is because the weight of evidence is with the other party, or because the scales are equally balanced.'"

On the same subject, in Hill et al. v. Smith, 260 U.S. 592, 594, 43 S.Ct. 219, 220, 67 L.Ed. 419, Mr. Justice Holmes observed, during the course of the opinion in that case, that "it will not be necessary to repeat the distinction, familiar in Massachusetts since the time of Chief Justice Shaw, Powers v. Russell, 13 Pick. 69, and elaborated in the opinion below, between the burden of proof and the necessity of producing evidence to meet that already produced. The distinction is now very generally accepted, although often blurred by careless speech." See also concurring opinion of Judge Phillips in Kortz v. Guardian Life Ins. Co. of America, 144 F.2d 676, 679, 680 (C.C.A. 10).[2]

In my view, the Court in the Stahl case was using the term, "burden of proof," as meaning the burden on the part of the carrier of going forward or producing evidence to exonerate itself from liability. To hold otherwise would be to hold, *sub silentio*, directly contrary to the views of the Court as declared by Mr. Justice Stone in Schnell et al. v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373, and the line of prior decisions of the Court which were therein cited as authority; and I do not believe

the Court in the Stahl case intended so to do.

Accordingly, I am of the view that the District Court in the instant case properly held that the burden of proof, in the sense of ultimately establishing its case, rested upon appellant shipper.

Under the rule announced in the Stahl case, I consider the carrier here has affirmatively shown that the damage was occasioned by an excepted cause, and without fault on its part; and for these conclusions, I refer to the findings of the trial court.

The trial court found that the wooden case in which the camera was shipped was not constructed to provide adequate support for the camera in an inverted position, and, conversely, that it was designed to absorb considerable shock if dropped in an upright position. Further, the court found that the shipper improperly packed the camera upside down in an outer cardboard box; that it was possible that under the normal stresses of motor carriage over rough highways, the camera dropped of its own weight; that the wooden case in which the camera was packed was considerably smaller than the cardboard box in which it was placed, and that the excess space was filled with shredded paper; that although the corner of the paper box was crushed, as shown by the evidence, this was not sufficient to establish that the carrier was negligent; that in the ordinary course of loading, unloading, and hauling heavy bulky boxes, some jarring and jolting is to be expected; that the cardboard box was not

2. In McKelvey's Handbook of the Law of Evidence, 3d Ed., it is stated:
"Sec. 32. The expression 'burden of proof' has been used in a double sense:
(a) As meaning the duty of the person alleging the case to prove it.
(b) As meaning the duty of the one party or the other to introduce evidence.
"The first is the proper meaning of the term, and in fact is implied from the words themselves."
After a discussion of the foregoing Section, McKelvey states:
"THE BURDEN OF PROOF NEV-ER SHIFTS

"Sec. 33. The burden of proof never changes. It remains to the end of the case with the party who has it at the outset."
Discussion of this principle is supported by numerous authorities, by the author, and thereafter he further states:
"BURDEN OF PROCEEDING SHIFTS
"Sec. 34. The burden of proceeding with the evidence shifts from one party to the other."
In REYNOLDS' TRIAL EVIDENCE (pocket edition, 1911) the same views are expressed in Sections 78–88.

marked "fragile"; that in the absence of any evidence to the contrary, the carrier had no reason to handle this box any differently from any other of the packages; and that, in the absence of notice, a carrier is not obliged to anticipate that expensive, delicate machinery will be packed upside down in an inadequate container and shipped unmarked in this manner. These findings formed the basis of a judgment entered by the District Court in favor of the carrier.

It is to be observed also that a witness for the shipper testified it was customary to label fragile objects as such, on at least three sides, but that the cardboard carton in this case, which was in evidence, had no such "fragile" labels on it.

While the District Court did not explicitly state that the carrier affirmatively showed that the damage was occasioned by an excepted cause—improper packaging—and without fault on its part, the court, in the above findings, by clear implication, held—and all inferences supported such holding—that the carrier was without fault and that the damage arose from the improper packaging.

If it be considered that the shipper had established a prima facie case by proof of delivery of the shipment in good condition, and receipt by the consignee in damaged condition, this prima facie case was disputable and could be overcome by other evidence; and where such controverting evidence is introduced, an issue of fact is raised, which it is the duty of the trial court to determine.

It is my view that the claimed prima facie case was controverted by affirmative evidence; that, accordingly, an issue of fact was raised; that there was no substantial evidence that any negligence on the part of the carrier caused the damage; that the burden of proof rested upon appellant shipper; and that the findings of the trial court and its judgment entered in favor of the carrier were supported by substantial evidence.

Moreover, it appears not only that the shipper's alleged prima facie case was overcome by controverting evidence, but it also appears that the shipper failed to carry its initial burden of proof to establish a prima facie case.

It is a well-established rule that a common carrier is not liable for any loss or injury proximately resulting from the act or fault of the shipper, without fault on the part of the carrier. In this case, the evidence on behalf of the shipper showed that it was customary, in making shipments, to label fragile objects as such, but that no such labels were attached to the shipment in question. It was packed in such a way as to appear rightside up when it was upside down. No bracing or supports were used in packing the shipment to protect or secure the camera for transportation in an upside down position. The shipper did nothing to disclose to or inform the carrier of the fragility of this heavy, delicate and expensive piece of mechanism. It is a fair conclusion that the camera, as packed, might fall face downward in the course of handling even before delivery to the carrier. The defects of the packaging could not be detected by ordinary observation. These circumstances, in my view, relieved the carrier of any obligation to ascertain whether the contents were properly packaged for the shipment by truck, and placed upon the shipper the burden of proving that the packaged contents were properly loaded and secured for such shipping. A finding that the shipper did not meet that burden of proof would be supported by the evidence. The trial court, in its opinion, stated: "It is by no means certain that the shipper has even carried its initial burden of proof." However, the court did not base its decision on the failure of the shipper to prove that the shipment was in good condition when delivered to the carrier, although such a determination would have been supported by the evidence. Rather, the court rested its determination on the ground that the carrier had shown that the damage had proximately resulted from the shipper's improper packaging, and that the shipper had not thereafter carried the burden of proof of showing that the damage resulted from the car-

rier's negligence; and I concur in this determination.

In accordance with the foregoing, it is my view that the judgment of the District Court in favor of the carrier and its dismissal of the counterclaim of the shipper should be affirmed.